# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON VALDIZON, | Case No. 1:20-cv-01271-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

On September 8, 2020, Plaintiff Nelson Valdizon ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

On August 20, 2018, Plaintiff protectively applied for a period of disability and DIB, alleging disability beginning December 23, 2017, due to back and neck problems; hernia; left shoulder pain and tear; pain in both legs; high blood pressure; dizziness; headaches; brain slow; ear noise; heart pain; vertigo; thyroid; and low vitamin B. (Administrative Record ("AR") 21, 24, 52, 53, 64, 65, 76, 84, 183, 193, 209, 215, 220.) Plaintiff was born on December 23, 1965, and was 52 years old on the alleged disability onset date. (AR 26, 52, 63, 64, 75, 193, 209, 220.) Plaintiff received an eighth-grade education in El Salvador and has work history as a truck driver. (AR 36, 184.)

**A.    Relevant Medical Evidence[3]**

In December 2017, Plaintiff telephoned Kaiser Permanente complaining of headaches and requested an appointment with a Spanish-speaking physician. (AR 272.) The note documenting Plaintiff's call indicated that his preferred language is Spanish, and an interpreter was requested. (AR 271.)

Plaintiff presented to Lenita Williamson, M.D. in April 2018 for treatment for pain in his left shoulder following a motor vehicle accident. (AR 251–53.) The intake form indicates that Plaintiff's preferred language is Spanish. (AR 251.)

In July 2018, Plaintiff presented to Valery D. Tarasenko, M.D. of the Advanced Pain Management Institute for an initial pain consultation. (AR 300–304.) The visit note indicated that "[a] Spanish Language interpreter . . . was present throughout the evaluation due to a 1anguage barrier between the staff and the patient. This increased the time and complexity of the evaluation." (AR 300, 419.)

Records from Kaiser Permanente Medical Group from July 2019 indicate that while Plaintiff's spoken and written language is Spanish, no interpreter is needed. (AR 445.) A medication list from that same month instruct the Pharmacy Department to "[p]lease set the Spanish

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

1 label flag for this patient." (AR 446.)

**B.     Administrative Reports**

    **1.     Disability Report—Adult**

An Adult Disability Report dated August 30, 2018, indicates that Plaintiff cannot speak or understand English and that his preferred language is Spanish. (AR 182–92.) The report also states that Plaintiff cannot read, understand, or write more than his name in English. (AR 182.) Plaintiff would write and complete reports in his job as a truck driver, but the language of those reports is not indicated. (AR 185.) The report further notes that Plaintiff has a 12th grade education. (AR 184.)

    **2.     Work History Report**

Plaintiff completed a handwritten Work History Report in English on September 10, 2018 (AR 195–200.) At the hearing, Plaintiff testified, with the aid of an interpreter, that he "looked on Google and he, he—even though it's in English, he had it translated into Spanish and that's how he filled in the form." (AR 44–45.)

    **3.     Pain Questionnaire**

Plaintiff completed a handwritten Pain Questionnaire in English on September 10, 2017. (AR 203–205.)

**C.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on September 18, 2018, and again on reconsideration on December 21, 2018. (AR 76–80, 84–89.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 90–112.) The ALJ conducted a hearing on January 30, 2019. (AR 42–82.). Plaintiff appeared at the hearing, represented by counsel, and testified as to his alleged disabling conditions and work history. (AR 36–45.)

    **1.     Plaintiff's Testimony**

Plaintiff testified through an interpreter. (AR 39.) He testified he "finished eighth grade and had just begun the ninth" in El Salvador. (AR 36.) When asked whether he spoke English while he was working as a truck driver, Plaintiff replied that he "does know some -- a little English

and when it was necessary, he would." (AR 37.) Plaintiff also testified that he knows how to write in English "very little." (AR 38.) When asked whether he can read an English newspaper and understand an article, he replied that he "doesn't understand it, but he tries to understand, and he does know some words in English." (AR 38.) With respect to the Work History Report, Plaintiff testified that "he looked on Google and he, he—even though it's in English, he had it translated into Spanish and that's how he filled in the form." (AR 45.)

### 2. VE Testimony

A Vocational Expert ("VE") testified at the administrative hearing that Plaintiff had past work as a truck driver, Dictionary of Operational Titles (DOT) code 906.683-022, which was semi-skilled and medium work (medium and heavy as performed), with a specific vocational preparation (SVP)[4] of 3. (AR 45.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work experience. (AR 45.) The VE was also to assume this person could: lift 20 pounds occasionally and ten pounds frequently; stand, walk, and or sit for six out of eight hours; occasionally climb ramps or stairs, ladders, ropes, or scaffolds; frequently balance; occasional stoop, crouch, or crawl; frequently kneel; occasionally reach with the left upper extremity; and speak and write, and read some English, but is not entirely fluent, but can communicate verbally. (AR 46.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other, light, and unskilled jobs in the national economy, such as produce weigher, DOT code 299.587-010 with an SVP of 1; and cleaner and polisher, DOT code 709.687-010 with an SVP of 2. (AR 47.) The VE further stated that Plaintiff could perform the job of "cashier self-service," DOT code is 211.462-010 with an SVP of 2, "assuming that the person can communicate at least rudimentarily, rudimentary communication." (AR 47.) According to the VE, "the first two jobs don't require communication at all. The third job is the only one that has any base for -- for oral communication." (AR 47.)

The ALJ asked the VE, in a second hypothetical, to consider the individual presented in the

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

4

first hypothetical with the added limitation that such person would need three 15-minute breaks in addition to those breaks normally and regularly scheduled throughout the day.  (AR 48.)  The VE testified that there would be no work such person could perform.  (AR 48.)

Plaintiff's attorney asked the VE whether there would be any jobs available if the person in the first hypothetical could not communicate in rudimentary English, and the VE replied that "[i]t would eliminate the Cashier.  It wouldn't eliminate the first two."  (AR 48.)

**D.     The ALJ's Decision**

In a decision dated November 12, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 21–28.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 23–28.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 23, 2017 (step one).  (AR 23.)  The ALJ found that Plaintiff had the following severe impairments: left torn rotator cuff and degenerative disc disease of the cervical, thoracic and lumbar (step two).  (AR 23.)  However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 24.)  The ALJ then assessed Plaintiff's RFC and applied that assessment at step four.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

The ALJ determined that Plaintiff retained the RFC:

> to lift and carry 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday.  He can occasionally climb ramps, stairs, ladders, ropes or scaffolds.  He can frequently balance and kneel, and occasionally stoop, crouch, and crawl.  He is limited to occasional reaching with the left upper extremity (non-dominant).  He can speak, read and write some English, though not fluently.

(AR 24.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 25.)

The ALJ determined that, given his RFC, Plaintiff could not perform his past relevant work (step four), but could perform a significant number of other jobs in the local and national economies, specifically produce weigher, cleaner and polisher, and cashier (step five). (AR 27–28.) The ALJ further concluded that Plaintiff was defined as an individual closely approaching advanced age on the alleged disability onset date; he had a limited education and was able to communicate in English; and the transferability of job skills was not material to the disability determination because Plaintiff was "not disabled" under the Medical–Vocational Rules whether or not Plaintiff had transferrable job skills. (AR 26–27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on July 15, 2020. (AR 1–8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

#### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] [are] not only unable to do his previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Pavel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or

6

combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). The Court must instead determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ erred by failing to make an adequate finding of Plaintiff's literacy and ability to communicate in English, and this Court should reverse and find Plaintiff entitled to benefits or, alternatively, remand the decision. (Doc. 16.) Specifically, Plaintiff asserts that the ALJ failed to meet the step five burden of showing that there are jobs that Plaintiff can perform in light of his age, education, work experience, and RFC, because a person who has an RFC for light exertion, is closely approaching advanced age, has a limited education, and is unable to either communicate in English or is illiterate in English, is presumed to be disabled. (*Id*. at 4 (citing the Medical–Vocational Guidelines (the "Grids"), 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.09).) Plaintiff asserts that the ALJ is required to find that a claimant is both literate and able to communicate in English. (Doc. 16 at 5.) Plaintiff contends that the ALJ failed to find Plaintiff

8

literate in English and that the finding that Plaintiff could communicate in English was not supported. (*Id*. at 6–9.) As such, the ALJ's conclusion of literacy and ability to communicate in English does not constitute a sufficient finding on the record. (*Id*. at 9.)

Defendant contends that the ALJ's determination, which is no longer required under the current regulations, that Plaintiff could communicate in English, and could speak, read, and write some English, although not fluently, was supported by substantial evidence and should be upheld. (Doc. 19 at 8–10.)

**A.   Legal Standard**

The Commissioner considers education as a vocational factor. 20 C.F.R. § 404.1564. Under the regulation applicable at the time of the ALJ's decision, the categories of education that were considered included literacy and the ability to communicate in English.[5] *Id*. at 404.1564(b)(1), (b)(5). A distinction exists between an assessment of literacy and an assessment of the ability to communicate in English, and an ALJ must consider both in determining whether a claimant can perform work pursuant to the regulations. *Id*.; *see also Calderon v. Astrue*, No. 1:08–cv–01015 GSA, 2009 WL 3790008, at *9 (E.D. Cal. Nov.10, 2009).

Illiteracy is defined as "the inability to read or write. [The Commissioner] consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1).

The Commissioner further considers a claimant's ability to communicate in English:

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

---

[5] Regulation 20 C.F.R. § 404.1564 was amended on February 25, 2020, with an effective date of April 27, 2020. *See* REMOVING INABILITY TO COMMUNICATE IN ENGLISH AS AN EDUCATION CATEGORY, 85 Fed. Reg. 10586-01, 10856, 2020 WL 885690 (Feb. 25, 2020). There is no longer an "inability to communicate in English" category, and accordingly, this category is no longer in the Medical-Vocational Guidelines.

*Id*. at 404.1564(b)(5).  In *Silveira v. Apfel*, 204 F.3d 1257 (9th Cir.2000), the Ninth Circuit clarified that a claimant is illiterate if she is illiterate or unable to communicate in English, or both, not that a claimant must be both illiterate and unable to communicate in English.  *Id*. at 1262, n.13.

**B.     The ALJ's Consideration of Plaintiff's Language Abilities**

Plaintiff speaks primarily Spanish.  (*See* AR 251, 271–72, 445.)  An Adult Disability Report dated August 30, 2018, indicates that Plaintiff cannot speak or understand English and that his preferred language is Spanish.  (AR 182–92.)  The report also states that Plaintiff cannot read, understand, or write more than his name in English.  (AR 182.)  Plaintiff would write and complete reports in his job as a truck driver, but the language of those reports is not indicated.  (AR 185.)  Plaintiff completed a handwritten Work History Report in English on September 10, 2018.  (AR 195–200.)

At the administrative hearing, Plaintiff testified through an interpreter that he had the Work History Report translated into Spanish using Google so he could complete it.  (AR 44–45.)  Plaintiff further testified he knows how to write in English "very little" and knows how to read "some words" in English.  (AR 38.)  Although the Adult Disability Report indicates that Plaintiff has a 12th grade education, at the hearing Plaintiff testified he "finished eighth grade and had just begun the ninth" in El Salvador.  (AR 36.)  When asked whether he spoke English while he was working as a truck driver, Plaintiff replied that he "does know some—a little English" and would speak it "when it was necessary."  (AR 37.)  The hypotheticals posed by the ALJ to the VE assume an "individual of the same age, education, and work experience as the Claimant," but the ALJ did not explain what specific language skills the VE should consider.  (AR 45–46.)

The ALJ determined however that Plaintiff was able to communicate in English, finding as follows:

> Although the claimant utilized the services of a Spanish interpreter at the hearing, he testified that he did speak English while working as a milk truck driver.  He also testified that he could read and write some English, and admitted to completing the Work History [R]eport in the file.

(AR 27.)  These findings, however, misstate Plaintiff's testimony: he testified that he spoke only a "little" English while working as a truck driver and knows how to write "very little" English.  The

10

findings also ignore the fact that Plaintiff had to translate the Work History Report into Spanish using a translation service before completing it. Additionally, the ALJ did not attempt to determine what Plaintiff meant by "a little," "very little," or "some words." This evidence is insufficient to support a finding that Plaintiff is literate. A vague response that Plaintiff can read "some words" and write "very little" is insufficient to establish that Plaintiff can read or write a simple message in the English language. *Calderon*, 2009 WL 3790008, at *9; 20 C.F.R. § 404.1564(b)(1). *See also Jeffrey v. Berryhill*, No. 17-1444, 2018 WL 3656154, at *4-5 (S.D. Cal. Aug. 2, 2018) ("Other courts have found that similarly scant evidence of a plaintiff's ability to read and write in English falls short of carrying the Commissioner's burden of establishing literacy.") (collecting cases). In the same way, testimony that Plaintiff spoke only "a little" English while working falls short of demonstrating that Plaintiff is able to communicate in English. *See Obispo v. Astrue*, No. 11-9381, 2012 WL 4711763, at *4 (C.D. Cal. Oct. 3, 2012) (finding error where claimant testified that he could read and speak "a little bit" of English, but it was unclear what plaintiff meant by "a little bit" or how significant this evidence was in relation to the other evidence of claimant's English skills); 20 C.F.R. § 404.1564(b)(5). Perhaps indeed Plaintiff does possess these abilities, but the record is far from clear.[6] *Silveira*, 204 F.3d at 1262.

Plaintiff is an individual closely approaching advanced age. (AR 26.) Grid Rule 202.09, as interpreted by the Ninth Circuit, directs a finding of "disabled" when a person is closely approaching advanced age, "has a skilled or semi-skilled work history with no transferable skills or an unskilled work history," and is illiterate or unable to communicate in English. *Silveira*, 204 F.3d at 1260–61 & n.11. *See Adriana R. v. Saul*, No. 2:20-CV-00261-MKD, 2021 WL 1413081, at *4 (E.D. Wash. Apr. 14, 2021) ("While Rule 202.09 states a finding of disability is directed for those with unskilled or no work, the rule also applies to individuals with skilled work who can no longer perform their past work and who do not have transferrable skills.") (citing DI 25025.025 VOCATIONAL FACTORS DO NOT MATCH A MEDICAL-VOCATIONAL RULE, SSA POMS DI

---

[6] The Court also notes the record contains written correspondence from the Commissioner to Plaintiff in Spanish. (*See* AR 18–20, 95–97, 102, 104–105, 120–26, 137, 151, 157, 239). Yet, Plaintiff also completed a handwritten Pain Questionnaire in English (AR 203–05), and completed the Work History Report in English (despite translating it to Spanish). (AR 195–200.)

11

25025.025).

At the administrative hearing, the VE testified that Plaintiff's former job as a truck driver was semi-skilled. (AR 45.) The ALJ determined that Plaintiff was unable to perform any past relevant work, and made no determination regarding the transferability of Plaintiff's job skills. (AR 26.) The ALJ's decision stated that "[t]he transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules [(the Grids)] as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills." (AR 27.) However, as Plaintiff is limited to light work (with additional limitations), is unable to perform his past work, and there has been no finding of transferable skills, Grid Rule 202.09 would direct the ALJ to find Plaintiff disabled if Plaintiff was found illiterate or unable to communicate in English. *See Garcia v. Astrue*, No. 1:11-CV-01965-SKO, 2013 WL 394517, at *6 (E.D. Cal. Jan. 30, 2013). Consideration of Plaintiff's literacy and ability to communicate in English is therefore crucial in determining disability in this case. *See id.*

It is the ALJ's burden to determine if Plaintiff is literate. *Silveira*, 204 F.3d at 1261–62. The ALJ did not meet its burden here, as its findings that Plaintiff is literate and able to communicate in English are not supported by substantial evidence. It was incumbent on the ALJ to develop the record further. *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) ("The ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.") (internal citations omitted). The Court therefore finds that the ALJ erred at step five in failing to fully develop the record with respect to Plaintiff's literacy and ability to communicate in English and failing to consider the application of Grid Rule 202.09 in the determination of whether Plaintiff was disabled.

**C.     The ALJ's Error Warrants Remand for Further Proceedings**

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. *See Kail v. Heckler*, 722 F.2d

1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *see Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980) (claimant deceased); where the record has been fully developed, *see Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985) ("[T]he uncontroverted evidence establishes total disability.").

Here, the Court concludes that this is not an instance where no useful purpose would be served by further administrative proceedings; rather, additional administrative proceedings still could remedy the ALJ's errors at step five of their analysis.  *See Silveira*, 204 F.3d at 1261–62 (remanding where ALJ made no express finding that claimant was literate in English and there was insufficient evidence in the record to determine whether he was literate in English).  *See also Salinas v. Berryhill*, No. 18-CV-04522-KAW, 2019 WL 4751945, at *7 (N.D. Cal. Sept. 30, 2019); *Calderon*, 2009 WL 3790008, at *10.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Nelson Valdizon and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **February 8, 2022**               /s/ *Sheila K. Oberto*               
                                           UNITED STATES MAGISTRATE JUDGE